UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
JACQUELINE BOGART,

                Plaintiff,            04-CV-6572T

v.                                         **DECISION
and ORDER**

JO ANNE BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____


                          INTRODUCTION

    Plaintiff, Jacqueline Bogart ("plaintiff"), filed this action

pursuant to the Social Security Act, codified at 42 U.S.C.

§§ 405(g), seeking review of a final decision by the Commissioner

of Social Security ("Commissioner"), denying her application for

Disability Insurance Benefits ("Disability").  On May 19, 2005, the

Commissioner sought judgment on the pleadings on grounds that her

determination is supported by substantial evidence contained in the

record. In opposition, plaintiff moves for judgment in her favor on

grounds that the Commissioner's determination was against the

weight of the evidence.

    For the reasons that follow, I find that the Commissioner's

determination denying the plaintiff's application for disability

benefits is supported by substantial evidence contained in the

record and therefore, the Commissioner's motion for judgment on the

pleadings is granted.

## BACKGROUND

Plaintiff is an unemployed 43-year-old woman with a high school equivalency diploma. (T18).[1] Primarily she has been employed as a nurse's aide. (T18). She applied for disability on March 11, 1998 for a closed period from August 12, 1997 to October 16, 2000. Plaintiff alleges disabilities of osteoporosis, costochondritis, and right shoulder tendonitis/bursitis. (T160-62). In support of her application for disability benefits, plaintiff appeared with a representative before Administrative Law Judge ("ALJ"), Franklin Russell on October 22, 1999. (T105). The ALJ found plaintiffs' injuries of costochondritis and right shoulder tendonitis/bursitis to be severe impairments but not rising to the level of a disability under the Social Security Regulations. (T114). Specifically, the ALJ found that while plaintiff was unable to perform her past relevant work because she suffered from two severe impairments within the meaning of the Act, she failed to qualify for disability benefits because she retained a capacity to perform sedentary work. (T102-119). On July 19, 2002, the Appeals Council remanded the case to the ALJ for further administrative proceedings. (T141-44). A new hearing was held on March 5, 2003 and

---

[1] All citations "T" refer to the Transcript of the Administrative Record submitted to the Court as part of defendant's Answer, which include, _inter alia_, plaintiff's medical records, transcripts of the hearings before the ALJ and copies of the ALJ's decisions denying plaintiff disability benefits.

a new decision was issued on October 6, 2003 where the ALJ again found that the plaintiff was not disabled but capable of performing sedentary work. (T14-24). On September 23, 2004, the Appeals Council denied a second review, making the Commissioner's final decision subject to judicial review. (T7-11). Plaintiff thereafter filed this action on November 16, 2004.

A. Medical Evidence

The record contains a voluminous amount of medical evidence which I have reviewed. The following summary is limited to the essential medical evidence relevant to this decision.

Prior to the period in issue but critical for medical background purposes, the record shows that in October of 1994 plaintiff suffered a right shoulder strain at work. (T221-232). An orthopedic surgeon, Dr. James A. Thomas, M.D., prescribed non-steroidal anti-inflammatory medications and low stress exercise. (T232).

In July 1995, plaintiff underwent a right shoulder MRI. The results of this test were negative and "quite unremarkable" showing no evidence of impingement syndrome. (T295).

In July 1995, Dr. Kevin Coughlin, M.D., plaintiff's treating physician, released plaintiff to return to work full time, provided that she avoided using her right arm above the shoulder and refrained from pushing, pulling, and lifting more than 10 pounds.

(T295). She continued as a nurse's aide until August of 1997. (T253).

On December 11, 1996 while still working as a nurse's aide plaintiff again saw Dr. Coughlin for similar complaints. (T299). This visit included an examination of her right shoulder that was "normal" to inspection. The doctor prescribed local heat or ice, Advil, and avoidance of using her right arm above her shoulder, of lifting more than 10 pounds and of pushing and pulling repetitively. (T299).

On June 20, 1997, plaintiff received lumbosacral x-rays after complaining of low back pain from lifting a patient. The results were negative. They showed "no anomaly" and "minimal rotoscoliosis." (T235, T239).

On July 3, 1997, plaintiff was diagnosed with hypothyroidism. (T243). On August 12, 1997, plaintiff's alleged period of disability began. In a follow up examination for her hypothyroidism on August 15, 1997, reports indicate that plaintiff was doing well. (T244).

On August 18, 1997, Dr. Albert Kochersperger examined plaintiff on behalf of Worker's Compensation. He diagnosed plaintiff with supraspinatus syndrome of the right shoulder and a scheduled 40% loss of use of the right arm. (T236).

On December 17, 1997, "normal" results were shown from a lumbosacral spine MRI. (T247).

4

On January 16, 1998, after completing a bone densitometry test Dr. Jana Pulkrabek, M.D., reported a 22% bone loss in plaintiff's spine and hips indicating a "moderate-high" risk of future fracture. (T237-38).

On May 4, 1998, plaintiff was consultatively examined by Dr. Wesley Canfield, M.D., (T253). During this examination, Dr. Canfield reported that plaintiff had no gait abnormality. Plaintiff was 4'11", weighed 184 pounds, and appeared to be in pain when she sat and spoke to him. (T255). In addition, upon examination Dr. Canfield reported that plaintiff appeared to have a limited range of motion in the right shoulder, right hip and lower back, however, when she bent over from the waist (a full 80 degrees) to pick up her bag full of medication off the floor she was able to do so without discomfort. (T255-56). Also, X-rays of her right shoulder appeared normal. (T260). Dr. Canfield restricted plaintiff from lifting and bending her right arm, but noted that "other individuals have noted disproportionate complaints to the signs." (T257).

Dr. Sury Putcha, M.D., reviewed the record for the State Agency and found that when Dr. Canfield ordered plaintiffs' restrictions he relied primarily on subjective evidence rather than on medical evidence. He observed that plaintiff's osteoporosis was being treated, that plaintiff had not suffered from spontaneous fractures, and that her lower back pain was without neurological

involvement. Thus, Dr. Putcha concluded that plaintiff could perform a full range of sedentary work and possibly some light level work functions. (T252).

On September 26-29, 1998, plaintiff complained of chest pain and was hospitalized. During this time plaintiff was given extensive cardiac testing. The cardiac stress test was negative and ischemic heart disease was not found. (T262-82). Dr. Robert Mauri diagnosed plaintiff's pain to be "musculoskeletal" in nature and possibly a condition called costochondritis. (T262). Upon discharge her condition was "excellent." (T263).

On October 18, 1998, plaintiff visited Dr. Coughlin again, this time complaining of lower back pain. (T301-02). Dr. Coughlin observed no spasms or pain within a straight leg raise to 60 degrees, her lumbar range of motion was good, her reflexes were normal, there was not much tenderness to the touch, and no objective findings were discovered during the examination. (T301). Dr. Coughlin wrote that the plaintiff could perform up to six hours of sedentary work. (T302-303).

On December 15, 1998, the plaintiff was examined consultatively for the Social Security Administration by Dr. Faiz Kahn, a psychiatrist. (T305-306). Plaintiff told Dr. Kahn that she watched television, cooked, cleaned, and talked on the phone, although the majority of their conversation centered around her physical limitations. (T306). She attributed her depression to her

diagnosis of osteoporosis and that her ex-husband moved their children to Texas. (T305). Dr. Kahn concluded that plaintiff was of average intelligence, she did not have a thought disorder, and she did not look overly depressed or anxious. Dr. Kahn found that plaintiff had an adjustment disorder with chronic depressed mood and personality disorder. (T306).

On Feb 25 and March 9, 1999, plaintiff complained of right wrist pains and numbness in four to five fingers, however, X-rays were negative. (T337-38).

On March 12, 1999, after reviewing a bone densitometry study, Dr. James Freeman, a rheumatologist, diagnosed plaintiff with osteopenia which is a less severe impairment than osteoporosis. The condition of osteopenia will place plaintiff at an increased risk of fracture in the future. (T327).

On March 17, 1999, plaintiff performed an exercise tolerance test. The results were negative for cardiac ischemic. (T328).

On April 6, 1999, plaintiff completed a bone scan for her hip and lumbar spine. The result showed slight improvement. (T340).

On June 19, 1999, Dr. H. Berliss reviewed the record and found that plaintiff did not have a severe psychiatric impairment. (T307).

On June 24, 1999, plaintiff complained of right wrist problems similar to carpal tunnel syndrome. (T324-25). Dr. Coughlin examined plaintiff and advised her that he "wasn't terribly concerned" about

7

carpal tunnel syndrome based on x-rays that showed "no significant abnormality." He recommended that plaintiff take Celebex. (T324-25).

On December 6, 1999, Dr. Freeman examined plaintiff for aches and pains in her neck, back, shoulders, elbows, wrists, hips, knees, and ankles and also for sensitivity to touch in her joints and muscles. (T353-54). He reported that plaintiff's complaints of generalized musculoskeletal pain were "consistent with" fibromyalgia. However, Dr. Freeman found X-rays of plaintiff's back normal, that she was able to bend within 6 inches of the floor, and that her straight leg raising was negative. He recommended low-level regular activity to maintain muscle fitness and prescribed the drug called Neurontin. (T354).

Additional medical evidence was presented to the court for the years 2001, 2002, and 2003, all of which was thoroughly reviewed. Among these records, appear a normal cardiac exam, a normal EKG, and several normal X-rays. However, the court will not expand upon these records because the disability period at issue ends October 16, 2000.

LEGAL STANDARD

A. Jurisdiction and Scope of Review-

42 U.S.C. § 405(g), grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. When considering a claim, the Court must accept the findings of fact

made by the Commissioner provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938).

Under this standard, the court's sole inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the law judge." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

B. The Social Security Regulations-

A disability is defined as

>the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

An individual's physical or mental impairment is not disabling under the Act unless it is:

>of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Berry v. Schweiker, 675 F.2d 464, 466-467 (2d Cir. 1982).

In evaluating disability claims, the Commissioner instructs adjudicators to follow the five step process promulgated in 20

C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity.  Second, if the claimant is not so engaged, the Commissioner must determine whether the claimant has a "severe impairment" which significantly limits his ability to work.  Third, if the claimant does suffer such an impairment, the Commissioner must determine whether it corresponds with one of the conditions presumed to be a disability by the Social Security Commission.  If it does, then no further inquiry is made as to age, education or experience and the claimant is presumed to be disabled.  If the impairment is not the equivalent of a condition on the list, the fourth inquiry is whether the claimant is nevertheless able to perform his past work.  If he is not, the fifth and final inquiry is whether the claimant can perform any other work.  The burden of proving the first four elements is on the claimant, while the burden of proving the fifth element is on the Commissioner.  <u>Bush v. Shalala</u>, 94 F.3d 40, 44-45 (2d Cir. 1996).

<u>DISCUSSION</u>

Here, the ALJ followed the five step procedure.  The ALJ found that plaintiff: (1) had not engaged in substantial gainful employment from August 12, 1997 to October 16, 2000; (2) suffered from shoulder tendonitis/bursitis and costochondritis: which constituted a severe impairment; (3) did not have an impairment listed in Appendix 1, Subpart P, Regulation No. 4 of the Social

Security Regulations; (4) could not perform her past relevant work, and (5) possessed the capacity to perform sedentary work. (T23). The Commissioner contends that because there is substantial evidence in the record to support the ALJ's determination that plaintiff is not disabled, her motion for judgment on the pleadings should be granted, and plaintiff's complaint should be dismissed.

I find that the ALJ's conclusion is amply supported by substantial evidence in the record. The ALJ found that the plaintiff had right shoulder tendonitis/bursitis and costochondritis during the pertinent period, impairments that are severe but do not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No.4. Since this combination of "severe" impairments fails to meet the mandatory criteria, the ALJ determined that plaintiff has the ability to perform sedentary work. He based this decision on medical evidence presented in the record. In addition, the ALJ found plaintiff's costochondritis impairment failed to meet the 12-month continuous duration requirement because when plaintiff was diagnosed with costochondritis she was then found to be in "excellent" condition three days later. (T21).

Furthermore, the ALJ considered several other of plaintiffs' alleged impairments and found them all not to be severe. The ALJ found no severe back impairment because MRIS of the lumbar spine were normal, no herinated discs were shown, and lumbosacral x-rays

were negative. (T247, 235, 355). Plaintiff was able to bend within six inches from the floor and her straight leg raising tests were negative. (T353- 54). In addition, plaintiff was observed bending from the waist without pain to pick up her bag from the floor when minutes earlier she complained of pain. (T255-56). The ALJ found that plaintiff's condition of osteopenia (a milder form of osteoporosis) was not severe because she had suffered no spontaneous fractures and moreover, no doctor limited her activity because of the condition. (T252). The ALJ found no evidence of disabling depression based on a mental status examination that failed to reveal any evidence of a gross psychiatric disorder. Plaintiff had sought no psychiatric treatment or medications for depression. (T305-06). The ALJ found no severe heart impairment based on extensive cardiac tests that all produced negative results. (T328, 335, 361). Lastly, the ALJ did not find plaintiff's impairment of fibromyalgia to be severe. In this instance, plaintiff was complaining of general musculoskeletal pain. Based on this subjective evidence, the doctor found her symptoms to be "consistent with" fibromyalgia, however, no limitations were given by the doctor, in fact regular activity was recommended to maintain muscle fitness. (T354).

## CONCLUSION

For the reasons set forth above, I find substantial evidence in the record to support the ALJ's conclusion that plaintiff is not

disabled and can perform sedentary work.  Accordingly, the decision of the Commissioner denying plaintiff's disability claim is affirmed, the defendant's motion for judgment on the pleadings is granted, and the complaint is dismissed.

    ALL OF THE ABOVE IS SO ORDERED.

               S/ Michael A. Telesca

               _____

               _____
                   MICHAEL A. TELESCA
               United States District Judge

DATED:     Rochester, New York
           October 24, 2005